UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY DAWN ROWE,   Civil Action No.: 17-13264
                                    Honorable Mark A. Goldsmith
            Plaintiff,   Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.

_____/

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 15, 16]

Plaintiff Kimberly Dawn Rowe appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act (SSA). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Rowe's motion [ECF No. 15] be **GRANTED**;

- the Commissioner's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

I. BACKGROUND

A. Background and Disability Applications

Rowe was born on June 4, 1962, making her 51 years old on her alleged onset date of August 1, 2013. [ECF No. 13-5, Tr. 148]. She has a twelfth-grade education and prior work history as a receptionist and a file clerk. [ECF No. 13-2, Tr. 16; ECF No. 13-6, Tr. 168]. Rowe alleged disability due to carpal tunnel syndrome, lower and upper back pain, right eye blindness, breast cancer in remission, bilateral knee pain, and nerve damage in the arms and legs. [ECF No. 13-6, Tr. 167].

After the Commissioner denied her disability application initially, Rowe requested a hearing, which took place in August 2016; she and a vocational expert (VE) testified. [ECF No. 13-2, Tr. 26-53]. In a September 21, 2016 written decision, the ALJ found Rowe to be not disabled. [*Id.*, Tr. 7-19]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Rowe timely filed for judicial review. [*Id.*, Tr. 1-6; ECF No. 1].

**B.     The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Rowe was not disabled. At the first step, he found that Rowe had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 13-2, Tr. 12]. At the second step, the ALJ found that Rowe had the severe impairments of "history of right breast cancer in remission; degenerative disc disease of the cervical and lumbar spines; left knee pain with history of torn medial meniscus repair surgery; [and] right eye cyst." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13].

Between the third and fourth steps, the ALJ found that Rowe had the RFC to perform light work[2] with additional limitations: "[S]imple routine

---

[2] The regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

4

repetitive work instructions (due to pain issues); occasionally bend, turn, crouch, stoop, climb, crawl, and kneel; no walking beyond two city blocks; no work around moving machinery or unprotected heights; occasional fingering and handling with upper extremities." [*Id.*, Tr. 13].

At the fourth step, the ALJ concluded that Rowe could not perform her past relevant work. [*Id.,* Tr. 16]. At the final step, after considering Rowe's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Rowe could perform work as an usher ticket taker, counter clerk, or product promotor, which exist in significant numbers in the national economy. [*Id.*, Tr. 17].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is

---

controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Rowe argues that the ALJ did not properly evaluate the medical opinion evidence, failed to consider Rowe's headaches, and did not articulate valid reasons for finding her testimony inconsistent with the evidence in the record. The Court finds that the ALJ's decision is not supported by substantial evidence, and that the decision should be remanded for further consideration.

## B.

Rowe contends that the ALJ violated the treating physician rule by allotting only partial weight to the opinions of Stephen J. Arntz, M.D. Dr. Arntz began treating Rowe in June 2013 when she complained of back pain that was "ongoing [for] a long time." [ECF No. 13-7, Tr. 358]. He referred her for MRIs, which were taken in July 2013 and revealed no significant abnormalities in the thoracic spine; normal alignment and

6

enhancement, but disc degeneration and moderate spinal stenosis due to disc bulge in the cervical spine; and disc degeneration with mild disc bulge and moderate spinal stenosis in the lumbar spine. [*Id.*, Tr. 211-14]. Dr. Arntz examined Rowe again later that month, and his largely illegible notes referred to "chronic pain," possible fibromyalgia and "off work." [*Id.*, Tr. 368].

Dr. Arntz referred Rowe to Alexandra Theisen, M.D., who examined her in October 2013. [*Id.*, Tr. 240]. According to Dr. Theisen, Rowe complained of lower back and neck pain for the past two to three years that had progressively worsened. [*Id.*]. On examination, Rowe was able to get on and off the examination table independently; had a normal gait; could toe walk but could not heel walk; had pain with forward flexion and extension; and was "diffusely and exquisitely tender to touch throughout the neck, periscapular region and lumbar spine" and "[n]early hypersensitive." [*Id.*, Tr. 241]. Her upper and lower extremity reflexes were "1+ bilaterally and symmetrically," and she had diffuse give-way weakness there and in "nearly all myotomes sampled." [*Id.*]. Her cervical extension and side rotation were somewhat limited due to pain. [*Id.*]. Dr. Theisen summarized her MRI reports as well and noted that Rowe was "not the best historian"

and had "[s]ignificant positive Waddell's sign[3] on exam." [*Id.*]. Dr. Theisen concluded that it was "[d]ifficult to say how much we will be able to help her," but offered physical therapy as it was "one modality" that she had not yet been offered. [*Id.*].

Rowe followed up with Dr. Theisen in December 2013, stating that her pain had worsened and that she also suffered headaches "every other day." [*Id.*, Tr. 239]. Rowe had gone to physical therapy at the Wellness Center on three occasions, but stated that she did not feel a difference and could not afford the $45 copay. [*Id.*]. On examination, she declined to bend forward or lean backward, claiming it would hurt too much; she had give-way weakness in the left leg and in the deltoid muscles; and her cervical range of motion was painful. [*Id.*]. Dr. Theisen found that Rowe's history was "not that clear" and that she would not be able to help Rowe with her pain, but she suggested that Rowe see a neurologist. [*Id.*].

---

[3]The significance of Waddell signs is unclear. *Compare Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 419-20 (6th Cir. 2008) (citing a doctor as indicating that "Waddell signs" is "a clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms."), *with Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 422 n. 15 (6th Cir. 2013) ("The literature ... reveals that there is no association between positive Waddell signs and the identification of secondary gain and malingering. Patients with strong psychological components to their pain often display these signs as well.") (internal quotation marks and citation omitted).

Rowe continued to treat with Dr. Arntz from December 2013 to June 2014. [ECF No. 13-7, Tr. 263, 267, 337-340]. And as had been recommended by Dr. Theisen, Rowe saw neurologist Umesh Verma, M.D., that June. [*Id.,* Tr. 242-43]. Dr. Verma found "2++" reflexes of Rowe's arms and absent reflexes of the ankles. [*Id.*, Tr. 242-43]. Dr. Verma assessed Rowe as having cervical and lumbar radiculopathy, and ordered an MRI of the cervical spine "as reflexes are somewhat brisk in arms," and a referral to a pain clinic for epidural blocks. [*Id.*]. The MRI testing that followed in August 2014 showed:

1. Multilevel degenerative spondylosis of the cervical spine, C3-C7.
2. C5-C6 moderate central spinal canal stenosis.
3. Neuroforaminal narrowing as follows: C5-C6, mild right and mild to moderate left; and C6-C7, moderate to severe left.

[*Id.*, Tr. 258-59].

Dr. Arntz authored three medical opinions on Rowe's disability and impairments. In February 2014, he wrote that Rowe "suffers from chronic back pain, neck pain, fibromyalgia and is incapable of working at any position due to her medical conditions." [ECF No. 13-7, Tr. 340]. He reasoned that her current position required her to stand on concrete for extended periods of time and that "sitting for extended periods is not an option either." [*Id.*]. In June 2014, Dr. Arntz opined similarly that Rowe

9

was incapable of working and added that "[p]erforming activities of daily living are an extreme difficulty for [Rowe]" due to her medical conditions. [*Id.*, Tr. 337]. In August 2014, Dr. Arntz noted that Rowe's recent MRI results showed "multilevel degenerative spondylosis of the cervical spine, C3-C7 and moderate central spinal canal stenosis, C5-C6." [*Id.*, Tr. 334]. He again found that Rowe was "unable to stand or sit for extended periods of time due to her conditions" and had extreme difficulty with activities of daily living. [*Id.*].

## C.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great

deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

Here, the ALJ rejected Dr. Arntz's overall assessment because it was not supported by "the medical evidence and treatment record as a whole." [ECF No. 13-2, Tr. 14-15]. He specifically cited to the examination reports of Dr. Theisen and Dr. Verma, as well as a report from Nurse Practitioner (NP) Lisa Reppert of Allegiance Neurosurgery. [*Id.*, citing ECF No. 13-7, Tr. 245-50]. As the ALJ noted, NP Reppert examined Rowe five days after Dr. Arntz's August 2014 statement and reported largely normal results on examination, though it appears that a positive straight leg raising result was indicated bilaterally from the "elevated/supine" position. [ECF No. 13-7, Tr. 248]. The ALJ found NP Reppert's report to be "consistent with the medical evidence and the record." [ECF No. 13-2, Tr. 15]. But NP Reppert had actually mischaracterized Rowe's MRI results as showing "multi level degenerative changes *without* acute nerve compression or spinal stenosis," [ECF No. 13-7, Tr. 249 (emphasis added)], while the August 2014 MRI

11

instead revealed moderate spinal stenosis at C5-C6, and mild to severe neuroforaminal narrowing at C5-C6 and C6-C7. [*Id.*, Tr. 258-59]. The ALJ's discussion of Rowe's 2014 MRI results also failed to mention the mild to severe neuroforaminal narrowing within Rowe's cervical spine. [ECF No. 13-2, Tr. 14].[4]

The ALJ also concluded that Dr. Arntz's opinions sharply conflicted with Dr. Theisen's notes, but he did not explain how. As the ALJ noted, Dr. Theisen found Rowe to have diffuse pain and tenderness throughout the neck and lumbar spine as well as weakness in the upper and lower extremities bilaterally. [ECF No. 13-2, Tr. 14, ECF No. 13-7, Tr. 239-41]. The ALJ noted that Rowe had only attended three physical therapy sessions between her October and December 2013 visits to Dr. Theisen, but he failed to address that Rowe was unable to afford the copay for that treatment. *See* SSR 16-3p, 2016 WL 1119029, at *8-9 ("When we consider the individual's treatment history, we may consider [that] an individual may

---

[4] The Commissioner argues that "it is not clear" that NP Reppert mischaracterized the record. [ECF No. 16, PageID.460-61]. Even accepting the Commissioner's argument, that lack of clarity prevents the Court from meaningfully reviewing the ALJ's decision. *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (requiring an appellate record to "permit meaningful review" of the ALJ's decision).

not be able to afford treatment and may not have access to free or low-cost medical services.").

The ALJ's analysis of the inconsistency between Dr. Arntz's opinions and Dr. Verma's examination is also lacking. As the ALJ noted, Dr. Verma found largely unremarkable results upon examination, but he did find slightly abnormal arm reflexes, and absent reflexes of the ankles. [ECF No. 13-2, Tr. 14; ECF No. 13-7, Tr. 243]. More notably, Dr. Verma still assessed Rowe as having cervical and lumbar radiculopathy, ordered a cervical spine MRI because of Rowe's arm reflexes, and referred Rowe to a pain clinic for epidural blocks. [ECF No. 13-7, Tr. 243].

The only other medical opinion of record is that of state agency consultant Bradley J. Lewis, M.D., from January 2015, who opined that Rowe could perform medium work. [ECF No. 13-3, Tr. 71-79]. The ALJ afforded partial weight to this opinion as well, finding that Rowe's impairments supported greater limitations. [ECF No. 13-2, Tr. 15]. Dr. Lewis appears to have not considered or been aware of the other treating physician opinions of record, despite his opinion post-dating all three of Dr. Arntz's. [*See* ECF No. 13-3, Tr. 76 ("There is no indication that there is medical or other opinion evidence.")]. And Dr. Lewis seemed to rely on NP Reppert's faulty summary of Rowe's 2014 cervical spine MRI, as the only

13

references to any MRI appear under "Allegiance Neurology" and note "multilevel degenerative changes without acute nerve compression." [*Id.*, Tr. 75, 77]. As noted, NP Reppert worked with "Allegiance Neurosurgery," [ECF No. 13-7, Tr. 245-50], which strongly suggests that Dr. Lewis simply parroted NP Reppert's description of the MRIs when describing the evidence in the record.

As such, there is no opinion of record other than those of Dr. Arntz that assessed Rowe's moderate spinal stenosis at C5-C6, and mild to severe neuroforaminal narrowing at C5-C6 and C6-C7.[5] [ECF No. 13-7, Tr. 258-59]. In addition to relying on the MRI results, Dr. Arntz's opinions reflected his longitudinal treatment of Rowe over the course of at least nine visits from 2013 to 2014, [ECF No. 13-7, Tr. 263, 267, 334, 337-40, 358, 368], and his review of the examination reports from Dr. Theisen and Dr. Verma. This is important because the treating physician rule is predicated on the detailed, longitudinal picture and unique perspective that treating sources provide:

> 'Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal

---

[5] The Court recognizes that ALJs are not generally required to rely on the opinion of a medical expert in making his disability finding, but they are also warned against interpreting raw medical data beyond their expertise. *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 726-27 (6th Cir. 2013).

14

> picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'

*Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ's conclusory and faulty determination that Dr. Arntz's opinions lacked substantial support in the record, and were "sharply" inconsistent with one-time examiners, did not establish the necessary good reasons.

The Court notes that the determination of whether Rowe is disabled is reserved for the Commissioner. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The ALJ was not required to give controlling weight to Dr. Arntz's opinions that Rowe was unable to work. But Dr. Arntz's August 2014 opinion that Rowe cannot stand or sit for extended periods of time and that she has extreme difficulty performing activities of daily living must be considered under the treating physician rule. [ECF No. 13-7, Tr. 334]. As noted above, the RFC limits Rowe to light work, which entails "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." § 404.1567(b). The RFC had additional limitations on Rowe's walking distance and other positional limitations, but no limitation on standing or sitting for extended periods of

15

time. Thus, the ALJ's failure to properly consider Dr. Arntz's opinions was not harmless.

As for Rowe's contention that her testimony was consistent with the record, the Commissioner responded that "as discussed previously, the ALJ appropriately considered the evidence of record in connection with assessing Dr. Arntz's opinions, including her daily activities." [ECF No. 16, PageID.466]. Having already found that the ALJ did not appropriately consider all of the evidence, the Court recommends that Rowe's subjective statements be reweighed on remand after a more thorough and complete analysis of the record.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Rowe's motion for summary judgment be [ECF No. 15] be **GRANTED**; that the Commissioner's motion [ECF No. 16] be **DENIED**; and that the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

Dated: November 21, 2018

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this

16

Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

17

limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 21, 2018.

> s/Karri Sandusky on behalf of
> MARLENA WILLIAMS
> Case Manager